**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 21-20235

DEWAYNE JAVON BUTLER,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**

Defendant Javon Butler is charged with two counts of possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1). (ECF No. 17, PageID.28-29.) The United States Postal Inspection Service ("USPIS"), with the support of the United States Border Patrol and local police, intercepted two packages in late July and early August 2020 that contained over three kilograms of fentanyl. The government alleges that Defendant mailed the packages.

Defendant has filed a motion to suppress evidence of the packages, and he has moved to dismiss the case for improper venue. (ECF Nos. 26, 27.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will deny Defendant's motion to suppress and deny without prejudice his motion to dismiss.

## I. BACKGROUND

### A. First Package

On July 28, 2020, inspectors trained to detect and investigate illegal mailings stopped a package passing through Allen Park, Michigan. (ECF No. 26, PageID.190-91; ECF No. 31, PageID.282-83.) The package was sent from Las Vegas, was addressed to an individual in Sterling Heights, Michigan,[1] and listed as a return address "PrEcision Clolhing Inc., 211 N. St. Suite, Las Vegas, NV, 89101." (ECF No. 26, PageID.190-91; ECF No. 31, PageID.282-83.)

Based on the training and experience of postal inspectors, they were aware that the United States Postal Service ("USPS") is frequently used to transport controlled substances throughout the country. (ECF No. 26, PageID.191.) According to the inspectors, drug traffickers prefer Express Mail and Priority Mail services offered by USPS because of their increased reliability and the enhanced access to package tracking. (*Id.*) Most packages in Priority Mail are sent by businesses, and they tend to be smaller and weigh less than two pounds. (*Id.*, PageID.192; ECF No. 31, PageID.282-83.) Packages of this sort include books, clothing, and pharmaceuticals. (ECF No. 26, PageID.192.) The inspectors have learned that packages containing controlled substances have the following characteristics: they are heavier than the typical Priority Package, which generally weigh less than two pounds; they use handwritten labels; their labels do not include a business account number, which indicates that the sender paid cash; they are sent from or to localities frequently used as source or destination points for trafficking controlled substance. (ECF No. 26, PageID.192-93; ECF No. 31,

---

[1]     Sterling Heights is a locality in Metro Detroit.

PageID.282-83.) In addition, drug traffickers often use fictitious or incomplete names and addresses to conceal their identities. (ECF No. 26, PageID.193, 195; ECF No. 31, PageID.282-83.) Therefore, inspectors regularly conduct address verifications. (ECF No. 26, PageID.193, 195; ECF No. 31, PageID.282-83.)

The package in Allen Park exhibited many common characteristics of packages containing controlled substances. It was five pounds, ten ounces, well over the weight of packages typically observed by inspectors. (ECF No. 26, PageID.191; ECF No. 31, PageID.282-83.) The package had a handwritten label, there was no business account number, and the destination point was known by the inspectors as being a frequent destination point for packages containing controlled substances. (ECF No. 26, PageID.195; ECF No. 31, PageID.282-83.) In addition, inspectors ran the addresses of the sender and recipient through a database used by USPIS and discovered that the listed names of the sender and recipient were not associated with the identified addresses. (ECF No. 26, PageID.195; ECF No. 31, PageID.282-83.) According to the inspectors, legitimate mailings regularly have confirmed associations in the USPIS database with listed addresses; the lack of confirmed associations made the presence of controlled substances more likely. (ECF No. 26, PageID.195; ECF No. 31, PageID.282-83.)

As a result of these observations, the inspectors contacted and brought in a canine team from the United States Border Patrol. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) The dog was trained and certified in detecting numerous controlled substances, and it alerts to controlled substances by sitting at the staring and source of the odors. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) On a daily basis,

the dog and its handler worked together, and both were trained by the Border Patrol. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) The dog underwent recertification processes and was recently recertified by Border Patrol in April 2020. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) Based on hundreds of sniff tests of packages, buildings, and vehicles during training, the dog had proven itself to be accurate and reliable. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.)

On July 28, 2020, the suspect package and other similar packages were placed in front of the dog. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) Inspectors observed the dog examine the packages and sit in front of only the suspect package. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) The Border Patrol handler confirmed that, based on the dog's action, the suspect package either contained or was in contact with controlled substances. (ECF No. 26, PageID.196-97; ECF No. 31, PageID.282-83.)

On July 28, 2020, an affidavit recounting these facts was submitted to a Magistrate Judge in a warrant application to search the package. (ECF No. 26, PageID.197; ECF No. 31, PageID.282-83.) The Magistrate Judge approved the warrant, and a search of the package revealed 1.09 kilograms of fentanyl. (ECF No. 31, PageID.282-83.)

### B. Second Package

On August 6, 2020, inspectors stopped a second package traveling through Allen Park. (ECF No. 26, PageID.205-06; ECF No. 31, PageID.284.) The package, like the first, was sent from Las Vegas. (ECF No. 26, PageID.205-06; ECF No. 31, PageID.284.) The return address was in Redford, Michigan, under the name "Kick

Start," and the recipient's address was in Taylor, Michigan.[2] (ECF No. 26, PageID.205-06; ECF No. 31, PageID.284.) The package weighed twenty-three pounds, ten ounces. (ECF No. 26, PageID.205-06; ECF No. 31, PageID.284.)

Like the first package, the second package had several characteristics that lead inspectors to believe it was carrying controlled substances. The second package did not have a business account, had a handwritten label, and the destination point was frequently used to traffic narcotics. (ECF No. 26, PageID.209; ECF No. 31, PageID.284-85.) In addition, the package weighed well over the typical package weight for Priority Mail, which was under two pounds. (ECF No. 26, PageID.209; ECF No. 31, PageID.284-85.) Finally, while the recipient was associated with the listed address, the name "Kick Start" was not, according to USPIS databases, associated with the return address. (ECF No. 26, PageID.209; ECF No. 31, PageID.284-85.)

On August 6, 2020, inspectors brought in a canine team from the Grosse Ile Police Department. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The dog was trained and certified to detect numerous controlled substances. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) When the dog detects controlled substances, it sits or lies down next to them. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The dog and its handler worked together on a daily basis, and both received training from RazorK9 Professional K-9 Services. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The United States Canine Association certified the dog and its handler in August 2019. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-

---

[2]     Taylor, like Sterling Heights, is located in Metro Detroit.

85.) After hundreds of sniff tests during training, the dog had proven itself to be accurate and reliable. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.)

The suspect package was placed with similar packages in front of the dog. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The dog examined the packages and sat in front of the suspect package. (ECF No. 26, PageID.211; ECF No. 31, PageID.284-85.) The hander then indicated that, based on the dog's actions, the package contained or was in contact with controlled substances. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.)

On August 6, 2020, inspectors sought a search warrant from a Magistrate Judge, which was granted (ECF No. 26, PageID.211; ECF No. 31, PageID.284-85.), and the package was found to contain 2.23 kilograms of fentanyl. (ECF No. 31, PageID.286.)

A criminal complaint for possession with intent to distribute controlled substances was filed against Defendant on January 22, 2021. (ECF No. 1.) Defendant filed the instant motions to suppress and dismiss on June 14, 2021. (ECF Nos. 26, 27.)

## II.  STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523,528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and

seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). Over the course of many years, the Supreme Court developed the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." *Id.* The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not a "necessary consequence of a Fourth Amendment violation." *Id.* at 139-40, 141 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (citations removed) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter future Fourth Amendment violations.").

The exclusionary rule serves to "prohibit[] introduction into evidence materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 536-37 (1988)). It also prohibits "the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Id.*

In deciding whether evidence was obtained improperly through an illegal search and seizure, "the court may rely on hearsay and other evidence, even though that

7

evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); Fed. R. Civ. P. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.").

## III. DISCUSSION

Defendant has filed a motion to suppress and a motion to dismiss for improper venue. (ECF Nos. 26, 27.) In the motion to suppress, Defendant also requests an evidentiary hearing. (ECF No. 26, PageID.186.) The court will first address Defendant's motion to suppress and his request for a hearing. It will then turn to Defendant's motion to dismiss.

### A. Defendant's Motion to Suppress

Defendant challenges the postal inspectors' decisions to stop the packages containing fentanyl while they were in transit in Priority Mail to conduct canine sniff tests. (ECF No. 26, PageID.170-180.) In addition, Defendant argues that search warrants lacked probable cause. (*Id.*, PageID.181-85.)

**1. Reasonable Suspicion to Detain the Packages**

"[O]nly reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004). This standard requires a "reasonable [and] articulable suspicion of criminal activity . . . based on the totality of the circumstances presented to the officer." *United States v. Winters*, 782 F.3d 289, 298 (6th Cir. 2015). An officer has "reasonable suspicion" when there exists "specific facts that would lead a reasonable officer to suspect illicit activity." *Id.* "A

8

'divide-and-conquer' analysis—where each factor [supporting reasonable suspicion] is singled out and the court engages in a post-hoc search for an innocent explanation—is not permitted." *United States v. Pacheco*, 841 F.3d 384, 391 (6th Cir. 2016).

      Postal inspectors had reasonable suspicion to believe that the two packages sent in Priority Mail in July and August 2020 contained controlled substances. Both parties accept the reasons inspectors provided for stopping the packages. The inspectors knew and understood that USPS, and specifically Priority Mail, are frequently used to transport illegal narcotics (ECF No. 26, PageID.191), and the first package exhibited many characteristics regularly associated with mail that contains controlled substances. (ECF No. 26, PageID.192-93; ECF No. 31, PageID.282-83.) The package was over five and a half pounds, which was well over the standard weight of Priority Mail packages according to the inspectors' professional experiences. (ECF No. 26, PageID.191; ECF No. 31, PageID.282-83.) Because Priority Mail is used primarily by businesses, packages generally weigh less than two pounds, and packages with a higher weight are more likely to contain controlled substances. (ECF No. 26, PageID.192; ECF No. 31, PageID.282-83.) Further, the package had a handwritten label, it had no business account number (indicating that the sender most likely paid cash), and the destination point was, according to the inspectors' professional knowledge, a frequent delivery point for controlled substances. (ECF No. 26, PageID.195; ECF No. 31, PageID.282-83.) Finally, in a USPIS database, the names of the sender and recipient did not match the addresses listed on the package. (ECF No. 26, PageID.195; ECF No. 31, PageID.282-83.)

The second package exhibited similar suspicious characteristics. It weighed over twenty-three pounds, far exceeding standard Priority Mail packages. (ECF No. 26, PageID.205-06; ECF No. 31, PageID.284.) The package had a handwritten label, did not have a business account number, and the destination point was, according to the inspectors' professional knowledge, a common delivery point for illegal narcotics. (ECF No. 26, PageID.209; ECF No. 31, PageID.284-85.) Finally, the name "Kick Start" listed on the return address was not associated with that address. (ECF No. 26, PageID.209; ECF No. 31, PageID.284-85.)

Considering the totality of the circumstances, as presented to the USPIS inspectors, there existed reasonable suspicion to temporarily detain the packages for further investigation. *Winters*, 782 F.3d at 298. The inspectors had several specific and articulable reasons for detaining both packages. *Id.* The packages were sent via Priority Mail, they were unexpectedly heavy, they had handwritten labels, there had no business account numbers, they were being sent to common destinations for the trafficking of controlled substances, and the addresses listed on the packages did not match the listed names. (ECF No. 26, PageID.191, 195, 205-06, 209; ECF No. 31, PageID.282-85.) Defendant does not contest that these observations were made by postal inspectors and were used by the postal inspectors to support the temporary seizure of the packages.

The Sixth Circuit has recognized that, in performing reasonable suspicion review for seizures of mail packages, it has "relied on many of the same factors" used by USPIS to detect suspicious packages. *United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008). These factors include the size of the mailing, whether the label is

10

handwritten, whether the listed names and addresses match, and whether the destination is a common delivery point for narcotics, which USPIS inspectors primarily relied on in this case. *Id.* at 501 n.2. (ECF No. 26, PageID.191, 195, 205-06, 209; ECF No. 31, PageID.282-85.)

When several of the USPIS factors are present, and even where there are fewer factors supporting reasonable suspicion than in this case, the Sixth Circuit has held in numerous cases that the temporary seizure of mail is constitutionally permissible. *See Robinson*, 390 F.3d at 859, 870 (holding that a postal inspector had reasonable suspicion to detain a package where the inspector believed the package smelled like marijuana, the return address was in a "known distribution area," and had handwritten labels); *Alexander*, 540 F.3d at 497, 501 (stating that a police officer had reasonable suspicion when a package lacked a signature, was coming from Las Vegas and was sent to common delivery site of drug trafficking, was marked for expedited delivery, and was heavy and dense); *United States v. Elgin*, 57 F. App'x 659, 661 (6th Cir. 2003) (holding that postal inspectors had reasonable suspicion that a package contained controlled substances when it was mailed from a city that was known by the inspectors to be a common source of illegal drugs, the return address did not match an actual address, and three other packages mailed to the same address contained fictitious return addresses); *United States v. Ligon*, --- F. App'x ----, 2021 WL 2472354, at *1, 5 (6th Cir. June 17, 2021) (finding that postal inspector had reasonable suspicion to detain a package based on its size, the fact that it was sent via Priority Mail, and that it had, according to the inspector's professional knowledge, places of origin and delivery commonly used to traffic controlled substances).

Under the inspectors' and USPIS's professional knowledge and experience, the packages at issue had several key characteristics of packages containing controlled substances. Although taken individually each characteristic may have had an innocent explanation, considering the totality of the circumstances, *Pacheco*, 841 F.3d at 391, including USPIS profiling factors, *Alexander*, 540 F.3d at 501, and the "class of mail, origin, destination, and size," *Ligon*, 2021 WL 2472354, at *5, the postal inspectors' observations had reasonable suspicion to believe the packages contained controlled substances. *See Robinson*, 390 F.3d at 870; *Alexander*, 540 F.3d at 501; *Elgin*, 57 F. App'x at 661; *Ligon*, 2021 WL 2472354, at *5. The court will deny Defendant's motion to suppress on this issue.

**2. Probable Cause to Search the Packages**

"A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Navarro-Camacho*, 186 F.3d 701, 706 (6th Cir. 1999). However, "[f]or a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established." *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994). As the Sixth Circuit explained in *United States v. Diaz*, the evidence or support for a dog's reliability need not be significant:

> When the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including the testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the "credibility" of the dog. Lack of additional evidence, such as documentation of the exact course of training, similarly would affect the dog's reliability. As with the admissibility of evidence generally, the admissibility of evidence regarding a dog's training and reliability is committed to the trial court's sound discretion.

*Id.* at 394. Thus, once certification has been established, no further testimony or proof regarding the dog's reliability is necessary. *Id.*; *see also Florida v. Harris*, 568 U.S. 237, 246 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").

The affidavits submitted to the Magistrate Judges to obtain the search warrants at issue stated and described the dogs' certifications. To search the first package, the affidavit explained that the dog at issue was trained and certified by the United States Border Patrol. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) The affidavit stated that the dog and its handler worked together on a daily basis, and it described the process by which the dog identified controlled substances. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) The dog and its hander were subjected to a recertification process and both received their recertification only three months prior to the sniff test. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) In total, before the sniff test was conducted in July 2020, the dog had undergone hundreds of similar tests in controlled environments, and the dog had proven itself accurate and reliable. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.) Finally, the dog properly identified controlled substances in the first package by sitting in front of the package, and the dog selected the package alone out of several similar packages. (ECF No. 26, PageID.196; ECF No. 31, PageID.282-83.)

Similarly, the affidavit used to support the search of the second package stated that the dog conducting the sniff test was certified. The affidavit stated that the dog and its handler were trained by RazorK9 Professional K-9 Services, and both were certified

13

by the United States Canine Association in August 2019. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The handler worked with the dog on a daily basis, and, after hundreds of sniff tests in training, the dog was shown to be accurate and reliable. (ECF No. 26, PageID.210; ECF No. 31, PageID.284-85.) The dog, following regular procedures, sat in front of the second package and identified it out of several similar packages as containing controlled substances. (ECF No. 26, PageID.211; ECF No. 31, PageID.284-85.)

Defendant does not argue or cite evidence showing that the United States Border Patrol, RazorK9 Professional K-9 Services, or the United States Canine Association fail to meet the standard of "bona fide [dog training and certification] organization[s]." *Harris*, 568 U.S. at 246. This fact alone justifies denial of the motion to suppress. *Id.*; *Diaz*, 25 F.3d at 394.

Furthermore, in several opinions, the Sixth Circuit has held that statements of a dog's training and certification with similar or less detail than the ones included in the affidavits at issue were sufficient to establish reliability of the dog. *See United States v. Berry*, 90 F.3d 148, 150 (6th Cir. 1996) (stating that an affidavit for a search warrant established reliability through references to the dog as "'drug sniffing or drug detecting dog" and assertions that the dog was trained and qualified investigator, despite failing to assert that the dog received specialty training to detect controlled substances, reasoning that "the affidavit need not describe the particulars of the dog's training"); *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) (noting that a dog had received certifications and it and its handler had undergone training, including 100 different episodes of sniff testing, and concluding that the facts presented were

14

"sufficient to establish [the dog's] reliability"); *United States v. Cook*, Case No. 89-5947, 1990 WL 70703, at *2 (6th Cir. May 29, 1990) (emphasis in original) ("The references in the affidavit to the dogs as 'narcotic dog Moose and narcotic dog Bandit' were a sufficient vouching [to establish probable cause] and reasonably implied '*trained* narcotic dog Moose and *trained* narcotic dog Bandit.'"); *Ligon*, 2021 WL 2472354, at *6 (holding that an affidavit for a search warrant adequately established a dog's reliability when the affidavit stated that the dog and its handler were certified and had completed a training program).

Thus, the affidavits in support of the search warrants stated and explained that the dogs used by the postal inspectors were "certified as . . . drug detection dog[s]," and the minimum requirements of reliability were met. *Diaz*, 25 F.3d at 394; *see Berry*, 90 F.3d at 150; *Torres-Ramos*, 536 F.3d at 554; *Cook*, 1990 WL 70703, at *2; *Ligon*, 2021 WL 2472354, at *6. (ECF No. 26, PageID.196, 210; ECF No. 31, PageID.282-85.) Defendant does not contest the adequacy of the certification processes cited in the affidavits or whether those certifications were completed by "bona fide [dog training and certification] organization[s]." *Harris*, 568 U.S. at 246. Consequently, denial of Defendant's motion to suppress is warranted.

### B. Defendant's Request for an Evidentiary Hearing

Defendant includes in his motion to suppress a request for an evidentiary hearing. (ECF No. 26, PageID.186.) In deciding motions to suppress, the court must hold an evidentiary hearing "if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th

Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)); *United States v. Schumacher*, 611 F. App'x 337, 341 (6th Cir. 2015) (citations removed) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."); *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001) ("A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear upon the legality of the search."). If, however, the questions presented are "entirely legal in nature" the court may decide the motion without a hearing. *Ickes*, 922 F.3d at 710. Further, even if there are contested facts, "a district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of [constitutionality] after the contested items are set aside." *Thompson*, 16 F. App'x at 344.

Here, the parties contest no facts that are material to the court's analysis. Defendant and the government agree in full on the what postal inspectors in Allen Park observed, what facts they based their decision to briefly detain the relevant packages, and what facts were used to support a finding of probable cause. The parties agree that postal inspectors found that the packages, in their professional experience, were unexpectedly heavy, had handwritten labels, did not have business tracking numbers, were sent to areas frequently used as drug trafficking destinations, and listed names that were not associated with recipient and return addresses. (ECF No. 26, PageID.165-69, 191, 195, 205-06, 209; ECF No. 31, PageID.282-85.) In addition, the parties do not dispute that the affidavit for the search warrant described the training and certification of the sniffing dogs and their handlers, the dogs and their handers' professional experiences together, the methods by which the dogs communicated a positive test,

16

and that both packages received positive tests when placed next to similar packages. (ECF No. 26, PageID.165-69, 196, 210; ECF No. 31, PageID.282-85.) Furthermore, Defendant does not dispute that United States Border Patrol, RazorK9 Professional K-9 Services, or the United States Canine Association are reliable and bona fide dog training organizations.

Instead, Defendant argues in his motion to suppress that, given the facts observed by the inspectors, the inspectors had not legally searched and seized the packages. However, as a matter of law, the postal inspectors had reasonable suspicion to detain the packages, *Robinson*, 390 F.3d at 870; *Alexander*, 540 F.3d at 501; *Elgin*, 57 F. App'x at 661; *Ligon*, 2021 WL 2472354, at *5, and the search warrant affidavits established the reliability of a positive drug sniffing test. *Berry*, 90 F.3d at 150; *Torres-Ramos*, 536 F.3d at 554; *Cook*, 1990 WL 70703, at *2; *Ligon*, 2021 WL 2472354, at *6. In sum, there is no "contested issue[] of fact" as to the facts postal inspectors used to support reasonable suspicion and probable cause. *Ickes*, 922 F.3d at 710. The facts material to the court's analysis are not disputed with "definite, specific, detailed, and non-conjectural" arguments, and an evidentiary hearing is unnecessary. *Id.*

### C. Defendant's Motion to Dismiss

Defendant argues that venue is improper in this district because he is alleged to have mailed the two packages containing fentanyl from Las Vegas. (ECF No. 27, PageID.242.) According to Defendant, he never possessed with intent to distribute controlled substances in Michigan. (*Id.*)

"Venue lies in any district in which the offense was committed." *United States v. Thomas*, 74 F.3d 701, 709 (6th Cir. 1996). Possession with intent to distribute is a

17

continuing offense and is thus governed by the venue provisions of 18 U.S.C. § 3237(a). *United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003); *accord United States v. Williams*, 274 F.3d 1079, 1083-84 (6th Cir. 2001). Under § 3237(a), venue is proper in any district where the offense was "begun, continued, or completed." Further, venue analysis considers "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." *Id.* at 423 (stating that even if a drug trafficking defendant acted solely outside the relevant district, venue could be proper in that district considering "[t]he effects of the attempted distribution"); *accord Thomas*, 74 F.3d at 709.

"Although venue generally is not a factual element of a crime, it nevertheless is an essential part of the government's case." *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984). "The government must prove proper venue for each count by a preponderance of the evidence." *United States v. Petlechkov*, 922 F.3d 762, 769 (6th Cir. 2019). Determining the proper venue can often require resolution of factual disputes, and, in those circumstances, the government must make its case in favor of venue at trial. *See id.* at 768 (stating that "the government . . . offer[s] evidence at trial proving that venue is proper" and "if the government fails to meet its burden at trial, then the defendant is free to raise [an] objection"); *United States v. Cooper*, 40 F. App'x 39, 41 (6th Cir. 2002) ("[V]enue is ordinarily a question of fact for the jury.").

Defendant contests the factual predicates that the government must make in order to prove that this district is the proper venue. The arguments and factual disputes over whether the offenses were "begun, continued, or completed" in this district, 18 U.S.C. § 3237(a), and over other factors such as "the locus of the effect of the criminal

18

conduct," *Zidell*, 323 F.3d at 423, must be resolved at trial. *See Petlechkov*, 922 F.3d at 769, 771; *Cooper*, 40 F. App'x at 41; *see also* Fed. R. Crim. P. 12(b)(1) (stating that a party may raise a pretrial motion only if the court can resolve the motion "without a trial on the merits"); *United States v. Taylor*, Case No. 04-130, 2006 WL 4643321, at *1 (S.D. Ohio July 31, 2006) ("Given that venue . . . must be proved by the preponderance of the evidence at trial, it is not a defense that can be ruled upon by pretrial motion."); *United States v. Med 1st*, Case No. 16-4848823, 2017 WL 4848823, at *1 (W.D. Ky. Oct. 26, 2017) (finding that dismissal before trial of a criminal indictment for improper venue "would intrude upon the province of the jury to determine what actions were taken by the defendants and where they occurred").

Therefore, the court will deny without prejudice Defendant's motion to dismiss for improper venue. At trial, Defendant will have the opportunity to object to the government's proof of venue.

## IV. CONCLUSION

Postal inspectors had reasonable suspicion to believe that packages Defendant allegedly mailed contained controlled substances. Canine sniff tests conducted by trained and certified dogs provided the inspectors probable cause to search the packages. Finally, the dispute over venue is not properly resolved by the court pretrial. Accordingly,

IT IS ORDERED that Defendant's "Motion Suppress" (ECF No. 26) is DENIED.

IT IS FURTHER ORDERED that Defendant's "Motion to Dismiss [for] Improper Venue" (ECF No. 27) is DENIED WITHOUT PREJUDICE.

                                  s/Robert H. Cleland             /
                                  ROBERT H. CLELAND
                                  UNITED STATES DISTRICT JUDGE

Dated: August 4, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 4, 2021, by electronic and/or ordinary mail.

                                  s/Lisa Wagner                /
                                  Case Manager and Deputy Clerk
                                  (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-20235.BUTLER.MotiontoSuppressandMotiontoDismissforImproperVenue.RMK.docx